New York State Workers' Compensation Board, in its capacity as the governmental agency charged with the administration of the Workers' Compensation Law and attendant regulations, and in its capacity as the successor in interest to the Healthcare Industry Trust New York Workers' Compensation Self-insurance Trust a/k/a New York Healthcare Industry Workers' Compensation Self-Insurance Trust, Plaintiff,

against
Any-Time Home Care, Inc., et al., Defendants.

Clearview Nursing Home, L.P.; Manhattanville Healthcare, LLC; Hudson Realty; Pyramid Management, LLC; Regency Extended Management, LLC; Rockaway Extended Management, LLC; JBG Holding Co. LLC d/b/a Woodhaven Nursing Home; Waterview Nursing Care Center, Inc.; Hudson View Care Center, Inc. d/b/a Regency Extended Care Center; Park House Care Center, LLC; Parkview Nursing Home, Inc.; Caton Park Nursing Home; Rockaway Care Center; Park Nursing Home; Rockaway Care Center, LLC; Sunshine Care Corp. d/b/a Hempstead Park Nursing Home, Inc., Silver Lakes Nursing Home, Inc.; Clearview Octagon Corp., Third-Party Plaintiffs,
against
UHY LLP, SGRisk, LLC; Daniel G. Hickey, Sr., Daniel G. Hickey, Jr.; Martin D. Rakoff; Louis J. Vigliotti; Mark J. Bottini; Chester J. Walczyk; and Joseph F. Taylor, Third-Party Defendants.

5753-13

Cummings & Page, LLP
Attorneys for Third-Party Defendant SGRisk, LLC
(Kevin Page, of counsel)
16 Studio Hill Road
Briarcliff Manor, New York 10510-1331
Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.
Attorneys for Third-Party Defendants Daniel G. Hickey, Sr., Daniel G. Hickey, Jr., Martin D. Rakoff, Louis J. Vigliotti, Mark J. Bottini, Chester J. Walczyk and Joseph F. Taylor ("CRM Individuals")
(Gina T. Angrisano, of counsel)
20 Corporate Woods Boulevard
Albany, New York 12211-1843
Vedder Price, P.C.
Attorneys for Third-Party Defendant UHY LLP
(John H. Eickemeyer and Daniel C. Green, of counsel)
1633 Broadway, 31st Floor
New York, New York 10019
Duane Morris LLP
Attorneys for Third-Party Plaintiffs
(Anthony J. Costantini, Jerome T. Levy and Eric W. Ruden, of counsel)
1540 Broadway
New York, New York 10036
Rupp Baase Pfalzgraf Cunningham LLC
Attorneys for Plaintiff New York State Workers' Compensation Board
(Geffrey Gismondi and Matthew C. Lenahan of counsel)
1600 Liberty Building
Buffalo, New York 14202


Richard M. Platkin, J.

Third-party defendants SGRisk, LLC, UHY LLP, Daniel G. Hickey, Sr., Daniel G. Hickey, Jr., Martin D. Rakoff, Louis J. Vigliotti, Mark J. Bottini, Chester J. Walczyk and Joseph F. Taylor move for, among other things, an order coordinating the third-party action with the matters subject to the February 23, 2011 order of the Litigation Coordinating Panel. The third-party defendants' applications are opposed by the third-party plaintiffs and supported by plaintiff New York State Workers' Compensation Board ("Board" or "WCB").
BACKGROUND
A. The Main Action
This is an action brought by the Board in its capacity as the governmental agency charged with administration of the Workers' Compensation Law ("WCL") and as the successor to the Healthcare Industry Trust of New York ("HITNY" or "Trust"). The Trust was a group self-insured trust ("GSIT") formed pursuant to the WCL and attendant regulations. The Trust's members were employers within the healthcare industry that conducted business in New York State and were required to provide workers' compensation coverage to their employees.
HITNY was formed and began operation in late 1999 with Compensation Risk Managers, LLC ("CRM") serving as its group administrator. On or about December 31, 2007, the Board assumed administration of the Trust after finding it to be insolvent and unable to properly administer outstanding liabilities (see 12 NYCRR 317.20 [c]).
After assuming administration, the Board issued letters to Trust members advising them of their joint and several liability for the Trust's deficit, estimated to be about $90 million at that point, and the prospect of collection actions against members who failed to pay their share. The Board also commissioned a forensic analysis of the Trust by the public accounting firm of Bollam, Sheedy, Torani & Co., LLP ("BST"). In a report dated November 24, 2009, BST found that the Trust's accumulated deficit had grown to over $220 million as of September 30, 2008.
After receiving BST's report, the Board issued letters to the former Trust members dated December 1, 2009, advising of their joint and several liability for the increased deficit. Some of the former HITNY members entered into settlement agreements with the Board; others did not. The Board commenced the above-captioned action in this Court (Connolly, J.) on October 18, 2013 against the non-settling former members of the Trust to recover the accumulated deficit ("Main Action"). Under the extant scheduling order, all disclosure in the Main Action, including non-party discovery, is to completed by June 29, 2018, and the Board is to file its note of issue by August 21, 2018.
B. The Third-Party Action
On November 14, 2017, seventeen of the defendants named in the Board's collection action commenced the above-captioned third-party action for indemnity and contribution. The third-party complaint names the following third-party defendants: (a) UHY LLP ("UHY"), which served as independent auditor to the Trust; (b) SGRisk, LLC ("SGRisk"), which served as actuary to the Trust; and (c) Daniel G. Hickey, Sr., Daniel G. Hickey, Jr., Martin D. Rakoff, Louis J. Vigliotti, Mark J. Bottini, Chester J. Walczyk and Joseph F. Taylor, individuals who are alleged to have been the owners, officers and/or directors of CRM ("CRM Individuals").
C. Other Actions Pending Against the Third-Party Defendants
The third-party defendants are named as defendants in a number of other pending cases seeking monetary damages arising from the collapse of eight CRM-administered GSITs ("Trusts"). The following actions remain pending against them in this Court: (a) the CRM Individuals are defendants in New York State Workers' Compensation Bd. v Compensation Risk Mgrs., LLC (Index No. 10288-09 ["CRM Action"]); (b) UHY and SGRisk are defendants in New York State Workers' Compensation Bd. v SGRisk, LLC (Index No. 4620-11 ["SGRisk Action"]); and (c) SGRisk and the CRM Individuals are defendants in Healthcare Industry Trust of New York v Compensation Risk Managers Agency, Captive, LLC (Index No. 5966-09 ["Member [*2]Action"]), a suit brought by certain former members of HITNY.[FN1]
Discovery is ongoing in all of these actions.
D. The Order of Coordination
On March 31, 2010, CRM applied for an order from the New York State Litigation Coordinating Panel ("LCP") coordinating certain actions pending in this Court and elsewhere in the State pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.69. The actions that were the subject of the application included the CRM Action, the Member Action and four putative class actions against CRM then-pending in Supreme Court, Erie County.[FN2]

Under court rules, coordination is available "when related actions are pending in the courts of the Unified Court System in more than one judicial district and it may be appropriate for these actions to be coordinated . . ." (22 NYCRR 202.69 [a]). In determining whether to issue an order of coordination, the LCP must consider, among other things:
[T]he complexity of the actions; whether common questions of fact or law exist, and the importance of such questions to the determination of the issues; the risk that coordination may unreasonably delay the progress, increase the expense, or complicate the processing of any action or otherwise prejudice a party; the risk of duplicative or inconsistent rulings, orders or judgments; the convenience of the parties, witnesses and counsel; whether coordinated discovery would be advantageous; efficient utilization of judicial resources and the facilities and personnel of the court; [and] the manageability of a coordinated litigation (id. [b] [3]).
If an order of coordination is granted, it shall direct the coordination of the cases for purposes of "pretrial proceedings, including dispositive motions" (id. [a]), but upon the termination of coordination, "the actions shall be remanded to their counties of origin for trial unless the parties to an action consent to trial of that action before the Coordinating Justice" (id. [d]; see also id. [c] [2]).
The LCP granted CRM's application for coordination on February 23, 2011, ordering "that any [pending] actions seeking damages alleged to have arisen from CRM's administration of GSITs" shall be coordinated (Page Aff., Ex. G ["Order of Coordination"], p. 3). The Order of Coordination further directs the coordination of "related matters subsequently filed, . . . unless the [LCP] rules otherwise pursuant to Subdivision F of the Procedures of the Panel" (id., pp. 2-3).
Under the above-cited procedures, the party seeking coordination of a related matter commenced after issuance of the Order of Coordination shall serve a notice requesting coordination, and the case shall thereafter proceed as a coordinated case "unless, within 21 days from said service, an objection is raised by counsel for a party to the action that th[e] case does [*3]not properly fall within the ambit of the Panel's decision and order" (Procedures of the Litigation Coordinating Panel ["LCP Procedures"] [F] [1]). "In the event such an objection is raised, an application for an order directing coordination shall promptly be made to the [LCP] by the proponent of coordination" (id.).
E. The SGRisk and CRM Individuals' Settlements
On December 31, 2014, the WCB entered into a global settlement whereby SGRisk agreed to pay $1,333,875 to settle all claims arising from its actuarial work for the Trusts, including HITNY. In March 2016, the CRM Individuals (and certain other defendants named in the coordinated cases who are not named as third-party defendants herein) agreed to pay the Board the sum of $4 million to settle the claims brought against them relative to their involvement with CRM and the Trusts. Both settlements are conditioned on, among other things: (a) judicial approval of the settlements as fair and reasonable to the Board, the Trusts and the former employer-members of the Trusts; (b) dismissal of all pending claims against the settling parties with prejudice; and (c) entry of a permanent injunction restraining parties who were given notice of the application for judicial approval of the settlements from prosecuting claims against SGRisk and the CRM Individuals arising from the their involvement with the Trusts.
The Board commenced a special proceeding in this Court on April 28, 2017 (Index No. 2829-17 ["Article 77 Proceeding"]), seeking approval of the two settlements and granting the other relief necessary to effectuate them. As is pertinent here, the Board petitions for an order and judgment: (1) approving the settlement agreements with SGRisk and the CRM Individuals; (2) declaring that the settlements reached with SGRisk and the CRM Individuals are final and binding on all persons and entities given notice of the Article 77 Proceeding ("Notice Parties"); (3) declaring that all claims that have been asserted by the Notice Parties against SGRisk or the CRM Individuals arising out of their involvement with the Trusts shall be dismissed with prejudice and extinguished; and (4) permanently enjoining the Notice Parties from asserting any future lawsuits or claims against SGRisk or the CRM Individuals.
The Order to Show Cause ("OTSC") bringing on the Article 77 Proceeding required that notice of the petition be given to all potentially interested persons and entities, including the third-party plaintiffs and all other former members of the Trusts. The OTSC also provided that any Notice Party who failed to object to the relief requested by the Board in the time and manner directed by the OTSC shall be deemed to have waived its right to object.
The Article 77 Proceeding was returnable on October 13, 2017. While the Court did receive certain objections to the Board's petition from 12 of the 4,678 former members of the Trusts, no objections to the settlements with SGRisk or CRM Individuals (or the ancillary relief requested by the Board) were received from the third-party plaintiffs or any other former member of HITNY.[FN3]
 However, in light of intervening appellate precedent, the Court issued an order dated December 28, 2017 that adjourned the return date of the Article 77 Proceeding to May 22, 2018 to give the parties time to supplement the record.
F. Notices of Coordination
The third-party action was commenced on November 14, 2017, about one month after the return date of the Article 77 Proceeding. On or about December 15, 2017, SGRisk, the CRM Individuals and UHY served separate notices of coordination with respect to the third-party action (see LCP Procedures [F] [1]).
In apparent recognition that the third-party plaintiffs would oppose coordination,[FN4]
SGRisk's counsel contacted the LCP's law clerk on December 20, 2017 to inquire about the manner in which an application should be filed pursuant to Subdivision F of the LCP Procedures (see Page Aff., ¶ 14). Less than one hour later, counsel received a phone call from the Presiding Justice of the LCP (Maltese, J.), "direct[ing] [SGRisk] to file any application for coordination before the Justice who[] was currently presiding over [the coordinated cases], and not with the Panel itself (due to the fact that the Panel had previously decided and issued a Coordination Order relating to the CRM matter)" (Page Aff., ¶ 15). This directive is confirmed in an email from the LCP's Presiding Justice (Page Aff., Ex. H).
After receiving a copy of the email, the third-party plaintiffs' counsel wrote to the Presiding Justice "to correct the misapprehensions that have been created" (id., Ex. I). The third-party plaintiffs asserted, among other things: the Order of Coordination "does not apply to the instant case since it is not a multi-department matter;" the Order of Coordination does not apply to the third-party complaint; and the application is a "disguised Motion for Severance . . . [that] can only be brought before the judge presiding over both the complaint and the third-party complaint" (id.).
The Presiding Justice responded via email as follows: "[T]his will be straightened out by the Justices handling these matters. Since both Justices are in Albany County, it would appear that even under Article 6 of the CPLR that joinder or consolidation may merge these matters . . . . But I will leave that decision to them" (id., Ex. J.).
G. The Instant Applications
On January 11, 2018, SGRisk, the CRM Individuals and UHY presented the undersigned with separate OTSCs bringing on applications for, among other things, coordination of the third-party action as a related case under the Order of Coordination. The proposed OTSCs also included temporary stays of the third-party action. The Court signed the OTSCs in the form presented, over the objections of the third-party plaintiffs.
SGRisk moves for an order granting one of the following three forms of alternative relief: (1) coordinating the third-party action with actions currently subject to coordination pursuant to the Order of Coordination; (2) directing that the third-party action be assigned and/or transferred to the undersigned pursuant to the terms of the OTSC bringing on the Article 77 Proceeding; or (3) severing the third-party action pursuant to CPLR 603 and/or 1010, and transferring said action to the undersigned. SGRisk also seeks an order staying the third-party action pending determination of the Board's Article 77 proceeding and issuance of a case management upon coordination, transfer or reassignment. The CRM Individuals and UHY move for substantially the same relief.
The third-party defendants contend that coordination is required pursuant to the Order of Coordination inasmuch as the allegations of the third-party complaint arise out of the CRM's [*4]administration of the Trust. SGRisk and the CRM Individuals further emphasize that their settlements with the Board are conditioned upon the extinguishment of all claims arising out of their involvement in the Trusts, including the claims of former members, and the prosecution of the third-party action in an uncoordinated fashion may scuttle settlements that have been in the works for years.[FN5]
They further observe that the third-party action was not commenced until one month after the return date of the Article 77 Proceeding, and the third-party plaintiffs failed to object to the relief sought by the Board therein. SGRisk and the CRM Individuals also state their intention to move to dismiss the third-party action if the Board's petition is granted, and they argue that such a motion properly is directed to the Judge who presided over the Article 77 Proceeding.
In addition to the Order of Coordination, the third-party defendants offer two other bases for transferring the third-party action to the undersigned. First, they rely upon the OTSC bringing on the Board's Article 77 Proceeding, which provides, in pertinent part, that "all actions and proceedings commenced after the date this [OTSC] is granted which relate to the subject matter of this proceeding shall be assigned or transferred to the Justice before whom" the Article 77 Proceeding is pending. They further argue that severance of the third-party action is warranted under CPLR 603 and/or 1010 to facilitate judicial economy and avoid inconsistent adjudications.
In opposing the applications, the third-party plaintiffs argue that the third-party defendants have failed to demonstrate their entitlement to severance under CPLR 603 and/or 1010. The third-party plaintiffs further assert that their affirmative defenses of in pari delicto and laches in the Main Action are based on the same operative facts as the third-party complaint, and this commonality of issues counsels in favor of consolidation, not severance.[FN6]

Finally, the third-party plaintiffs contend that the Article 77 Proceeding cannot bar their claims against SGRisk or the CRM Individuals.[FN7]

ANALYSIS
The Court begins with the third-party defendants' application for an order coordinating [*5]the third-party action with the matters currently subject to the Order of Coordination.
Initially, the Court recognizes that both the LCP Procedures and the Order of Coordination contemplate that the LCP would resolve any dispute as to whether the third-party action should be subject to coordination. The Order of Coordination provides that "related matters subsequently filed" shall be coordinated, "unless the [LCP] rules otherwise pursuant to Subdivision F of the Procedures of the Panel" (Order of Coordination, pp. 2-3). And under the LCP Procedures, a subsequently filed case that is noticed as a coordinated case shall be subject to coordination unless there is a timely objection, in which case "an application for an order directing coordination shall promptly be made to the [LCP] by the proponent of coordination" (LCP Procedures [F] [1]).
Nevertheless, the proponents of coordination in this case promptly made inquiry of the LCP and were directed by its Presiding Justice to submit their application to the undersigned, as Coordinating Justice. Under the circumstances, the Court is satisfied that the LCP has permissibly made a limited delegation of its administrative authority (see LCP Procedures [E] [3] ["The determinations of the Panel are purely administrative in nature"]; see also 22 NYCRR 202.69 [c] [2] ["The Coordinating Justice shall have authority to make any order consistent with this section and its purposes"]).
As to the merits, it is clear that the allegations of the third-party complaint arise out of CRM's administration of the Trust, and the third-party action is "related" to the coordinated cases within the meaning of the Order of Coordination. In their opposition, the third-party plaintiffs do not argue to the contrary, and, in fact, do not even address this issue in the body of their memorandum of law.
Nor does the Court see merit in the three arguments previously proffered by the third-party plaintiffs in opposition to the third-party defendants' notices of coordination. 
First, while the court rules governing coordination "apply when related actions are pending in the courts of the Unified Court System in more than one judicial district" (22 NYCRR 202.69 [a]), that requirement was met at the time when the Order of Coordination was issued. The third-party defendants' applications are directed at implementing the terms of the Order of Coordination, not seeking entry of a new coordination order.
Second, the third-party plaintiffs have not identified any limitation on the administrative authority of the LCP to order the coordination of a third-party action for pre-trial purposes.
Finally, the Court does not believe that the applications for coordination are "disguised applications for Severance," as previously maintained by the third-party plaintiffs. A determination that the third-party action is a related case simply means that the pre-trial proceedings concerning the same will be coordinated, but it will not affect the trial of the action (cf. CPLR 1010 [authorizing "separate trial of the third-party claim or of any separate issue thereof"]).
Based on the foregoing, the Court concludes that the third-party action is subject to coordination under the Order of Coordination.[FN8]
As such, the third-party action shall proceed as a coordinated case, subject to the authority of the Coordinating Justice to terminate coordination [*6]upon a finding "that the purposes of [the rules governing coordination] can be best advanced by termination of the coordination" (22 NYCRR 202.69 [d]).
The Court further determines that the third-party action should be stayed pending determination of the Article 77 Proceeding. If the Board's petition is granted, the effect of the Article 77 order and judgment on the claims of the third-party plaintiffs will become a threshold issue. As argued by SGRisk and the CRM Individuals, a motion to dismiss predicated on the effect of the Article 77 order and judgment is appropriately directed to the Judge who presided over that proceeding.
On the other hand, if the Board's petition is denied (or partially granted in a form that does not meet the conditions precedent to settlement), then it may be appropriate to revisit whether the continued coordination of pre-trial proceedings in the third-party action will further the purposes of 22 NYCRR 202.69 (b) (3). Factors to be considered will include: the status of discovery in the Main Action, including non-party discovery taken from the third-party defendants; the amount of additional party discovery sought against the third-party defendants; the status of discovery in the other coordinated cases to which the third-party defendants remain parties; the extent to which coordinated discovery would promote efficiency; the extent of common issues of law and fact between the Main Action and the third-party action; and the extent to which coordination may delay the progress of the Main Action (see id.).
All of these issues should be addressed at a case management conference in the Coordinated Cases, which shall be scheduled following determination of the Article 77 Proceeding.
CONCLUSION
Accordingly, it is
ORDERED that the above-captioned third-party action is a related matter subject to coordination pursuant to the February 23, 2011 order of the Litigation Coordinating Panel; and it is further
ORDERED that the third-party action is stayed in all respects pending further order; and finally it is
ORDERED that the Clerk of the Supreme Court, Albany County shall assign a separate Albany County index number, without fee, to the third-party action, and such index number shall serve as a means of identification and orderly processing of the third-party action while it remains subject to coordination.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to SGRisk's counsel for filing and service; all other papers are being returned to the Albany County Clerk. The signing of this Decision & Order shall not constitute entry or filing under CPLR 2220, and counsel is not relieved from the applicable provisions of that section respecting filing, entry and Notice of Entry.
Dated: March 23, 2018
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
1. Order to Show Cause (SGRisk), dated January 11, 2018; Affirmation in Support of Kevin Page, Esq., dated January 10, 2018, with attached exhibits A-R;
2. Order to Show Cause (CRM Individuals), dated January 11, 2018; Affirmation Pursuant to 22 NYCRR 202.7 (f) of Gina T. Angrisano, Esq., dated January 10, 2018, with attached exhibit 1; Attorney Affidavit of Gina T. Angrisano, Esq., sworn to January 10, 2018, with attached exhibits A-E;
3. Order to Show Cause with Interim Relief (UHY), dated January 11, 2018; Affirmation of Daniel C. Green, Esq. in Support of Order to Show Cause with Interim Relief, dated January 10, 2018, with attached exhibits A-E; Memorandum of Law of Third-Party Defendant UHY LLP in Support of Order to Show Cause with Interim Relief, dated January 10, 2018;
4. Attorney Affirmation in Support of Third-Party Defendants' Orders to Show Cause of Geffrey Gismondi, Esq., dated February 5, 2018; Plaintiff's Memorandum of Law in Support of Third-Party Defendants' Orders to Show Cause, dated February 5, 2018, with attached exhibits A-B;
5. Affirmation of Eric W. Ruden, Esq., dated February 5, 2018, with attached exhibits A-B; Third-Party Plaintiffs' Memorandum of Law in Opposition to CRM Third-Party Defendants', SGRisk's and UHY's Orders to Show Cause, dated February 5, 2018;
6. Reply Memorandum of Law of Third-Party Defendant UHY LLP in Further Support of Motion for Coordination, dated February 8, 2018;
7. Reply Attorney Affidavit of Gina T. Angrisano, sworn to February 9, 2018; and
8. Reply Affirmation of SGRisk, dated February 11, 2018, with attached Ex. A.



Footnotes

Footnote 1:The claims of the Member Action plaintiffs were assigned to the Board, and in a Decision & Order dated December 14, 2017, the action was dismissed as against UHY. In addition to the foregoing pending actions, UHY and SGRisk also were the subject of putative class actions filed in Supreme Court, Erie County in May 2013, but these actions were assigned to the Board and, upon assignment, were discontinued.

Footnote 2:As a result of CRM's bankruptcy, the Erie County actions eventually were discontinued.

Footnote 3:Certain former members of HITNY, represented by the law firm of Barclay Damon LLP, do object to the Board's proposed allocation of the settlement proceeds.

Footnote 4:The third-party plaintiffs filed a formal objection to coordination on January 5, 2018.

Footnote 5:The Board's settlements with SGRisk and the CRM Individuals call for them to tender almost all of their available insurance, and the policies are eroding policies, meaning that any money spent defending an action in which the policy is triggered reduces the coverage available for indemnification. Thus, SGRisk and the CRM Individuals argue that it would be untenable for them to settle the Board's claims but remain exposed to essentially the same claims from other parties without available insurance for defense and indemnification.

Footnote 6:While the third-party plaintiffs suggest that "consolidation" is appropriate, it is unclear what they mean by this.

Footnote 7:Insofar as the third-party plaintiffs oppose the relief sought by the Board in the Article 77 Proceeding, their remedy was to oppose the Board's petition, which they failed to do, and to the extent they argue that the order and judgment sought by the Board cannot serve as an eventual basis for the dismissal of their third-party complaint as against SGRisk and the CRM Individuals, this argument is premature.

Footnote 8:In view of this conclusion, the Court declines to consider the alternative requests for severance or transfer made by the third-party defendants.